J-S32024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DALE METZGER, | |
| Appellant | No. 1822 WDA 2014 |

Appeal from the PCRA Order of September 18, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002367-2008

BEFORE:  SHOGAN, OLSON AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                      **FILED JULY 30, 2015**

Appellant, Dale Metzger, appeals *pro se* from the order entered on September 18, 2014, dismissing his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously summarized the factual background of this case as follows:

> On the morning of January 18, 2008, [Victim] was awoken by noise by her bedroom door at approximately 7:45 [a.m.  Victim] lives . . . with her mother and brother.  [Victim] knew the house to be empty when she heard the noise because her mother and brother had already left for work.  When [Victim] attempted to exit her room, a disguised subject who had covered his face and hands with a hood and gloves attacked her. This assailant physically forced her back on the bed and instructed her to be quiet. He used a "high-pitched voice with a southern accent" that [Victim] immediately recognized as a voice used by her ex-boyfriend, Appellant.  [Victim] and Appellant dated from approximately August of 2006 to November of 2007 and suffered a miscarriage on December 5, 2007.

Once [Appellant] had [Victim] on the bed, he duct taped her eyes and mouth shut and hands together. He proceeded to rub his hands on her chest, telling her that he was going to "tell her to do stuff that she didn't want to do, but she was going to do it unless she wanted to get hurt, and he told her that she needed to try and enjoy herself." Appellant freed her hands and removed her clothes, and instructed her to "play with herself." When [Victim] covered herself, Appellant reminded her that she had to do what he told her or she would be hurt. At this point, [Victim] gained a small amount of visibility from underneath the duct tape that was over her eyes and nose. She also heard a "click" which sounded like a [disposable] camera, so she covered herself. Appellant climbed on top of her, grabbed her neck and wrists, and squeezed, telling her to "shut the F up and do what he said and don't touch him." Appellant th[en] inserted his penis into her vagina and remained inside of her until he ejaculated. [Victim] consented to none of this sexual activity.

After ejaculating, Appellant questioned [Victim] extensively about her ex-boyfriend, if she knew where he was and why she broke up with him. Appellant brought up topics that only Appellant could have known. Appellant told [Victim] that his name was "Junior" and that he was a friend of her current boyfriend. He said that she "had given him the cold shoulder, but she was just too pretty to pass up." After this conversation, Appellant instructed [Victim] to get into the shower and "rinse herself out." He gave her a "squirt bottle" and told her to place it inside of her vagina and squeeze to rinse out the semen. [Victim] took the squirt bottle and used it, but did not place it inside of her vagina because she wanted to preserve the DNA evidence from the sexual assault. Appellant also wanted her to use her fingers to "get the evidence out."

After they left the bathroom and came back to her room, Appellant went through [Victim]'s purse and wallet and took money ($24[.00]) and a $50[.00] gift card to Applebee's. He also took her down to her mother's room and took medication in pill bottles that [Victim]'s mother used for her cancer. Appellant then took [Victim] to the kitchen where he tied her up with a phone cord and told [Victim] not to call the police when he left. To make sure she would not, he disassembled her cell phone and said he was going to call her to make sure she complied. He asked her for her phone number and she gave him a false

number. At this point, Appellant went down the basement and exited through a door that only someone who had been in the house [previously] could have known about. [Victim] then freed herself with a kitchen knife, ran to the living room, grabbed the house phone[,] and dialed 911. As she looked out the living room window, she could see Appellant "walking up the hill with his hood up." Though she never saw his face, [Victim] was able to identify a small tattoo on Appellant's hand, at the base of his thumb once he had removed the gloves. They had gotten matching tattoos while they were dating of the "infinity sign." Further, at 9:54 [a.m.], right after the assault, Appellant left a voicemail, from his number, on [Victim]'s phone that said "Hi, Darlin, looks like you're not answering your phone like we talked about. I guess I will be in touch." He used the same high[-]pitched voice with a southern accent as her assailant had during the assault. Lastly, experts from the Allegheny County Medical Examiners Office were able to find DNA evidence from the [r]ape [k]it confirming that [Victim] did have intercourse with Appellant within 24 hours of the reported assault. [Victim] states that prior to her assault on January 18, she had not had sex with [Appellant] since November of 2007.

***Commonwealth v. Metzger***, 63 A.3d 830 (Pa. Super. 2012) (unpublished memorandum), at 3-5, *appeal denied*, 80 A.3d 776 (Pa. 2013) (internal alterations, footnote, citations, and ellipsis omitted).

The relevant procedural history of this case is as follows. On April 9, 2008, Appellant was charged via criminal information with burglary,[1] rape,[2] sexual assault,[3] unlawful restraint causing serious bodily injury,[4] making

---

[1] 18 Pa.C.S.A. § 3502.

[2] 18 Pa.C.S.A. § 3121.

[3] 18 Pa.C.S.A. § 3124.1.

[4] 18 Pa.C.S.A. § 2902.

terroristic threats,[5] simple assault,[6] and theft by unlawful taking.[7] On February 22, 2011, following a non-jury trial, Appellant was found guilty of all charges. On May 23, 2011, Appellant was sentenced to an aggregate term of 14 to 28 years' imprisonment. On direct appeal, this Court affirmed. *See id.*

On July 15, 2014, Appellant filed a *pro se* PCRA petition. On July 17, 2014, PCRA counsel was appointed. On July 25, 2014, PCRA counsel filed a motion to withdraw as counsel along with a letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On August 25, 2014, the PCRA court granted PCRA counsel's motion to withdraw. That same day, the PCRA court issued notice pursuant to Pennsylvania Rule of Criminal Procedure 907 of its intent to dismiss Appellant's petition without an evidentiary hearing. On September 9, 2014, Appellant filed a response to the Rule 907 notice. On September 22, 2014, the PCRA court dismissed the petition. This timely appeal followed.[8]

---

[5] 18 Pa.C.S.A. § 2706.

[6] 18 Pa.C.S.A. § 2701.

[7] 18 Pa.C.S.A. § 3921.

[8] On November 14, 2014, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On December 8, 2014, Appellant filed his concise statement. On January 22, 2015, the PCRA court issued its Rule 1925(a)
*(Footnote Continued Next Page)*

Appellant presents two issues for our review:

1. Did PCRA counsel's failure to investigate trial counsels' strategic/tactical decisions and the reasonableness thereof result in ineffective assistance of PCRA counsel and a failure to create any substantive PCRA record to support any viable appeal?

2. In failing to apply a more stringent review of PCRA counsel's *Turner/Finley* letter and without any actual opinion, was there an abuse of discretion violating due process when the PCRA court allowed PCRA counsel to withdraw while subsequently dismissing [Appellant's] timely filed first PCRA petition?

Appellant's Brief at 5 (complete capitalization removed).

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Montalvo*, 114 A.3d 401, 409 (Pa. 2015) (internal quotation marks and citation omitted). "In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775,

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

opinion. Both issues raised on appeal were included in Appellant's concise statement.

Although Appellant's concise statement was docketed after the applicable deadline, we conclude that the concise statement was timely pursuant to the prisoner mailbox rule. *See Commonwealth v. Jones*, 700 A.2d 423, 425–426 (Pa. 1997) (explaining the prisoner mailbox rule). Appellant dated the concise statement December 2, 2014 – a Tuesday. The concise statement was docketed on December 8, 2014 – a Monday. It is reasonable to assume that Appellant placed the concise statement in the stream of prison mail on or before December 4, 2014 and that it was delayed in reaching the PCRA court because of (1) prison mail procedures; (2) USPS transit time; and (3) the weekend. Therefore, we decline to find all of Appellant's issues waived.

779 (Pa. Super. 2015) (*en banc*) (internal quotation marks and citations omitted).

In his first issue, Appellant claims that PCRA counsel rendered ineffective assistance.  Our Supreme Court has explained:

> [T]o prove counsel ineffective, [a PCRA] petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.  Counsel is presumed to have rendered effective assistance.

> A court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted).  As Appellant challenges the effectiveness of PCRA counsel – and not trial counsel – he raises a layered ineffectiveness claim.  While a layered ineffectiveness claim presents a separate and distinct claim from the underlying ineffectiveness claim, if the underlying ineffectiveness claim is without merit then the resultant layered ineffectiveness claim is likewise without merit.  *See Commonwealth v. King*, 57 A.3d 607, 624 (Pa. 2012) (citations omitted).

We conclude that in the instant case, Appellant's layered ineffectiveness claims fail for the same reason that the underlying claims of

ineffectiveness fail. In his first claim of ineffectiveness, Appellant argues that PCRA counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness in not presenting evidence relating to the location of his cell phone during the attack. Appellant argues that such evidence would have given him an alibi. We agree with the PCRA court that failure to present evidence relating to the location of Appellant's cell phone did not cause actual prejudice. The evidence presented at trial was overwhelming that Appellant was at the crime scene and committed the attack. As noted above, Appellant's DNA was recovered from Victim's vagina. Furthermore, Victim was able to identify a tattoo of an infinity sign on Appellant's thumb. Victim was also able to identify Appellant's voice and was certain that the attacker had previously been in her home because he knew of the basement door. Finally, comments made by the attacker during the course of the rape included facts known only by Appellant. This evidence overcame any probative value relating to the location of Appellant's cell phone during the attack as Appellant could have left his cell phone in another location while assaulting Victim.

To the extent that Appellant argues that trial counsel was ineffective for failing to call an expert witness to testify regarding his cell phone data, that argument is without merit. "[T]o establish ineffectiveness for failing to call an expert witness, an appellant must establish that the witness existed and was available; counsel was aware of, or had a duty to know of the

witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." ***Commonwealth v. Weiss***, 81 A.3d 767, 804 (Pa.2013) (citation omitted). In this case, Appellant failed to show that an expert witness was willing and able to appear at trial. As such, Appellant's argument that trial counsel was ineffective for failing to call an expert witness lacks arguable merit. Accordingly, the corresponding layered ineffectiveness claim is without merit.

In his second claim of ineffectiveness, Appellant argues that his PCRA counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness in failing to pursue Victim's mental health records. Appellant contends that Victim was a "woman scorned." Appellant argues that Victim engaged in consensual sexual intercourse with him on January 17, 2008 and then concocted the story about the rape on January 18, 2008 in order to retaliate for a miscarriage suffered by Victim in December 2007. According to Appellant, Victim blamed him for the miscarriage and attempted to buy a firearm on the date she learned of the miscarriage in order to exact revenge. Appellant argues that Victim's mental health records would have shown that she was mentally unstable and that this evidence would have helped to undermine Victim's credibility.

We conclude that Appellant failed to plead and prove that failure to seek Victim's mental health records caused actual prejudice. The evidence -

physical, documentary, and testimonial - was overwhelming that Appellant was the individual that attacked Victim. The DNA test proved that Appellant had sexual intercourse with Victim during the 24-hour period prior to the test. The documentary evidence showed that Appellant contacted Victim mere minutes after the attack. During her testimony, Victim was able to identify Appellant as the attacker in multiple ways. First, she recognized his voice during the attack. Second, only someone familiar with the house would have escaped through the basement door. Third, she recognized a tattoo on Appellant's thumb. Fourth, the attacker relayed information only known by Appellant. Finally, Victim recognized Appellant's voice when he called to ensure she had not reassembled her cell phone. Evidence of Victim's alleged mental disorders would not have overcome the probative force of the inculpatory evidence. Because Appellant cannot demonstrate actual prejudice, Appellant's second claim of ineffectiveness fails.

In his third claim of ineffectiveness, Appellant argues that PCRA counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness in conceding that Appellant made an incriminating telephone call and that the piece of tape introduced at trial had been used to restrain Victim's wrist.[9] Appellant first argues that trial counsel conceded that Appellant placed the incriminating phone call. Appellant's counsel, however,

---

[9] The Commonwealth argues this issue is waived for failure to develop it in his brief. We disagree and conclude that the issue was properly developed in Appellant's brief.

made no such concession. Instead, he merely examined the witness regarding her testimony. *See* N.T., 1/19/11, at 65-66. Furthermore, even if counsel had made such a concession, it did not actually prejudice Appellant. As noted above, Victim testified that she recognized Appellant's voice. Thus, even if the telephone call came from a different phone, it could still have been placed by Appellant.

Appellant also argues that the duct tape introduced at trial was used to blind Victim, not restrain her wrists. We agree with the PCRA court that Appellant failed to prove that trial counsel's admission led to actual prejudice. Whether the tape was used to restrain Victim's wrists or blind her did not impact the trial court's finding that Appellant restrained Victim. Therefore, all three of Appellant's claims of ineffective assistance of trial counsel are without merit. Accordingly, Appellant's layered ineffective claim fails.[10]

---

[10] In addition to the three ineffectiveness claims discussed in his brief, Appellant raised an additional claim of ineffectiveness in his PCRA petition, *i.e.*, trial counsel was ineffective for failing to call a witness to discuss the circumstances surrounding Appellant's apprehension. As Appellant failed to develop that claim of ineffectiveness in his brief, it is waived. *See* Pa.R.A.P. 2101, 2119(a). Furthermore, even if the issue were preserved, we would conclude that this claim is likewise without merit. Finally, Appellant raises claims of ineffectiveness in his brief that were not properly preserved below, *e.g.*, trial counsel was ineffective for advising him to waive his right to a jury trial. As such, those issues are also waived. *See* Pa.R.A.P. 302(a). Again, even if the issue were preserved, we would conclude that this claim is without merit.

In his second issue, Appellant claims that the PCRA court abused its discretion by not applying a more stringent standard of review when reviewing PCRA counsel's **Turner/Finley** letter. We disagree. The PCRA court conducted an independent review of the record and determined that the issues discussed in PCRA counsel's **Turner/Finley** letter were without merit. **See** PCRA Court Opinion, 1/22/15, at 6. Thus, the PCRA court applied the proper standard of review when reviewing counsel's **Turner/Finley** letter. **See Commonwealth v. Pitts**, 981 A.2d 875, 876 (Pa. 2009).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2015